NOTICE

Decision filed 09/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240697

NO. 5-24-0697

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 24-CF-150 |
| | ) | |
| DANIEL DREW, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justices Barberis and Boie concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant appeals the trial court's order denying him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. For the following reasons, we affirm the trial court's order.

¶ 2                                    I. BACKGROUND

¶ 3    On May 20, 2024, defendant was charged, by information, with aggravated discharge of a firearm, in violation of section 24-1.2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/24-1.2(a)(2) (West 2022)), a Class 1 felony. The incident stemmed from defendant's alleged discharge of a firearm in the direction of his wife, Bria Drew. Defendant was also charged with unlawful possession of a weapon by a felon, in violation of section 24-1.1(a) of the Criminal Code of 2012

1

(*id.* § 24-1.1(a)), a Class 3 felony. On the same day the charges were filed, the State filed a petition to deny pretrial release, defendant's first appearance was held, counsel was appointed, and the trial court set the State's petition for hearing on May 21, 2024.

¶ 4 Following the first appearance hearing, defense counsel moved to continue the pretrial release hearing scheduled for May 21, 2024, due to a jury trial scheduling conflict. Counsel requested the hearing be continued until the afternoon of May 23, 2024. On May 21, 2024, the trial court issued an order granting the continuance and set the hearing for May 23, 2024, at 2 p.m.

¶ 5 A pretrial services investigation report revealed defendant was 30 years old and lived in Mt. Vernon with his wife, Bria, and two children aged 3 and 14. He had a valid driver's license and reliable transportation. He worked at an oil change business for two years. He reported that he did not have a history of drug abuse; however, Bria stated defendant regularly used cocaine and prescription drugs. The report indicated that defendant was on conditional discharge in Jefferson County case No. 19-CF-242 and was required to register as a sex offender. Defendant scored a 6 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised, which classified him as a level 3 (out of 6) risk of recidivism. Defendant's criminal history included convictions for theft in 2022, criminal damage to property and retail theft in 2018, indecent solicitation of a child on the Internet and possession of a controlled substance in 2017, criminal trespass to a residence in 2015, criminal damage to property in 2014, and battery in 2013, along with retail theft and unlawful consumption by a minor in 2012.

¶ 6 On May 23, 2024, a hearing was held on the State's petition to deny pretrial release. The court noted that the two charges set forth in the information were superseded by a bill of indictment. Defense counsel waived arraignment and entered a plea of not guilty. After defense counsel and defendant initially advised the court that defendant wished to waive the pretrial release

2

hearing, the defendant ultimately determined that he wished for the hearing to proceed. The court acknowledged the request and took a brief recess to allow counsel an opportunity to confer with his client.

¶ 7      Following the recess, defense counsel confirmed that he received all the materials necessary from the State. The State summarized defendant's prior criminal history seen in the pretrial investigative report and reiterated defendant's conditional discharge status in the theft case.

¶ 8      The State then proffered that Officer Morris of the Mt. Vernon Police Department would testify that on May 19, 2024, around 10:35 p.m., he was dispatched on a call for a report of gunshots. Upon arrival, the officer spoke with defendant's brother-in-law, Joseph Young. Joseph stated that his sister, Bria, and defendant got into an argument at a different location. They left that location and went to their residence. Joseph, being concerned about his sister's well-being, drove to the couple's residence. Upon his arrival, he saw defendant follow Bria out the back door of the residence, display a firearm, and then fire a shot toward Bria's leg. Joseph then exited his car and told Bria to leave with him. Bria's statement to officers was similar but added that defendant said to her—before firing the weapon—"I got something for you tonight." She advised officers that she was 5 to 10 feet away from defendant when he shot the weapon. Bria provided video surveillance of the incident to the officers that was consistent with Joseph and Bria's account of the incident. The officer located a hole in the ground consistent with a bullet hole but was unable to recover the bullet. Following the incident, Bria got in her brother's car.

¶ 9      The State further proffered that additional surveillance video showed defendant hiding the firearm in the grill. After viewing that video, law enforcement retrieved the gun, which was a .380 Ruger LCP with live rounds in the magazine and chamber. The State proffered that Bria would testify that she lawfully owned the weapon, which was contained in the residence she shared with

3

defendant. She further stated that she feared for her life if defendant was released, that she was afraid of defendant, and that he had potential access to other firearms. The State argued that since the entire incident was captured on video, it had an incredibly high likelihood of success of convicting defendant at trial and requested, given the statements by Bria, as well as for the safety of the community, that defendant be detained.

¶ 10     In response, defense counsel proffered that if defendant were released, he would have a different location where he could reside. He stated that defendant lived in Mt. Vernon for four years, had other family in the area, was locally employed at the same place for two years, and would be able to return to that employment, if released. He further proffered that defendant was not on probation or pretrial release when the incident occurred and no failure to appear was ever recorded with the court. Counsel further proffered that defendant did not suffer from any physical or mental health condition, that he would submit to any condition ordered by the court, and that an order of protection was already in place preventing defendant from contacting Bria.

¶ 11     In rebuttal, the State proffered that orders of protection and home confinement were insufficient to deter defendant from acquiring other firearms or preventing other individuals from providing defendant with a weapon. The State reminded the court of defendant's criminal history, including a prior felony conviction, and expressed concern with pretrial conditions due to defendant's ability to obtain additional weapons. The State asked the court to deny pretrial release.

¶ 12     Following the presentations, the court addressed defendant's prior criminal history, his inability to possess firearms due to a prior felony, and his shooting the weapon in the direction of a person. The court also noted the strength of the State's evidence against defendant and the potential prison term associated with the second count, which also concerned the court of willful flight. Thereafter, the court granted the State's motion and denied defendant pretrial release. The

4

court's detention order found that the proof was evident that defendant committed a qualifying offense, defendant posed a real and specific threat to the safety of any person(s) or the community, and no condition, or combination of conditions, could mitigate defendant's dangerousness. In support, the order noted the nature of the offense specific to Bria, the safety of Bria and Joseph, defendant's "extensive criminal history," and the safety of the community at large.

¶ 13 On May 24, 2024, defense counsel filed a motion for immediate release. In support, the motion contended the State failed to prove defendant committed the offense, that defendant posed a real and present threat to the safety of any person or the community, and that no condition, or combination of conditions, could mitigate the threat. The motion further contended the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. No argument related to the claims was presented.

¶ 14 The motion hearing was held on May 29, 2024. Following argument, which consisted solely of defense counsel reading the above-stated issues from the pending motion, the trial court denied the motion, and defendant appealed.[1]

¶ 15                                  II. ANALYSIS

¶ 16 Pretrial release—including the conditions related thereto—is governed by statute. See 725 ILCS 5/art. 110 (West 2022). A defendant's pretrial release may be denied only in certain statutorily limited situations. *Id*. § 110-6.1. In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great

---

[1]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Apr. 15, 2024), our decision in this case was due on or before September 6, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

5

that the defendant committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 17    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, determining dangerousness, the trial court considers evidence or testimony related to statutory factors. *Id.* § 110-6.1(g). To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching that determination, the trial court again considers numerous statutory factors, none of which are dispositive. See *id.*

¶ 18    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, unreasonable, or fanciful, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' "

6

*People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 19    Defendant's notice of appeal requested reversal of the detention order. Although no basis for the appeal was contained in the notice, Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) states that,

> "[a]s a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be waived."

Rule 604(h) further states, "The motion for relief will serve as the argument of the appellant on appeal. *** Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 20    Therefore, based on defendant's motion for immediate release, the potential issues on appeal included whether (1) defendant committed a qualifying offense, (2) the State proved defendant was a threat to the safety of any person or the community, (3) the State proved that no conditions existed to mitigate the threat, and (4) the trial court erred in determining defendant was unlikely to appear for any future court dates or to not be charged with a subsequent felony or Class A misdemeanor while on release. However, defendant's counsel on appeal, the Office of the State Appellate Defender (OSAD), filed a Rule 604(h)(2) memorandum on July 17, 2024. Therein, OSAD raised two issues, only one of which was raised below.

¶ 21    In *Forthenberry*, this court held that when a supporting Rule 604(h) memorandum is filed, it becomes "the controlling document for issues or claims on appeal" and the notice of appeal would not be used to "seek out further arguments not raised in the memorandum" unless jurisdiction was raised as an issue. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42. The *Forthenberry* holding is now supplemented by the amended language of Rule 604(h)(7), which states, "If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). OSAD's memorandum contained no identification of the issues from the motion for relief but clearly did not provide argument for three of the issues raised in defendant's motion for immediate release. Accordingly, we hold those issues were abandoned by appellate counsel and therefore will not be addressed. *Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 42-44.

¶ 22    OSAD first argues that the trial court violated section 110-6.1(c)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(c)(2) (West 2022)) when it failed to hold defendant's detention hearing within 48 hours of his first appearance. It concedes the issue was not raised before the trial court during the hearing on the petition to deny pretrial release, in the motion for immediate release, or during the hearing on the motion for immediate release. As such, OSAD argues this court should review the error as second-prong plain error or, in the alternative, that defense counsel's failure to raise the issue was ineffective assistance of counsel.

¶ 23    In response, the State argues that we need not consider OSAD's contention that defendant did not receive a timely hearing. In support, the State argues, citing Rule 604(h), that "amended Rule 604(h) is clear that the motion for relief is 'the argument of the appellant on appeal' such that 'any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived.' " It argues that since defendant's

8

argument was not presented below, the issue was waived.[2] Alternatively, the State argues that OSAD's claim of plain error lacks support and the claim for ineffective assistance of counsel is precluded by the doctrine of invited error.

¶ 24    Courts have generally held that the failure to object forfeits the right to consider the question on appeal. *People v. Carlson*, 79 Ill. 2d 564, 576 (1980) "It is fundamental to our adversarial system that counsel object at trial to errors." *Id.* (citing *People v. Roberts*, 75 Ill. 2d 1, 10 (1979)). Failure to object to an error results in forfeiture of that error and precludes review of the error on appeal. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The rationale behind this result is "because failure to raise the issue at trial deprives the circuit court of an opportunity to correct the error, thereby wasting time and judicial resources." *People v. Jackson*, 2022 IL 127256, ¶ 15 (citing *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). The rule "also prevents criminal defendants from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *Id.*

¶ 25    Forfeiture, however, is not absolute, and Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) "embodies the exception" to the forfeiture rule. *Carlson*, 79 Ill. 2d at 576. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). To consider an error that was not raised, the appealing party must request review under the plain-error doctrine. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Here, this was done.

---

[2]While both Rule 604(h)(2) and the State's argument use the word "waived," in this instance, we believe the proper word would be "forfeited." "Forfeiture is defined 'as the failure to make the timely assertion of [a] right.' " *People v. Sophanavong*, 2020 IL 124337, ¶ 20 (quoting *People v. Lesley*, 2018 IL 122100, ¶ 37). "Waiver, on the other hand, 'is an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* (quoting *Lesley*, 2018 IL 122100, ¶ 36).

¶ 26    However, "[t]he plain error rule does not call for the review of all forfeited errors." *Jackson*, 2022 IL 127256, ¶ 19. The "plain error rule is a narrow exception to forfeiture principles" and limits its application to "[p]lain errors or defects affecting substantial rights." (Internal quotation marks omitted.) *Id.* ¶ 18. Application of the rule allows for review of a forfeited error under two possible prongs. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Under the second prong, which was requested here, plain-error review is applied when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565. The burden of persuasion rests with the defendant. *Thompson*, 238 Ill. 2d at 613.

¶ 27    "The first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *People v. Moon*, 2022 IL 125959, ¶ 22. OSAD argues that the Code sets forth deadlines on when the hearing on the State's petition to deny release must be held, citing section 110-6.1(c)(2) (725 ILCS 5/110-6.1(c)(2) (West 2022)). It further argues, citing *People v. McCarthy-Nelson*, 2024 IL App (4th) 231582-U, that because defendant's hearing was not held within that period, he must be released.

¶ 28    In *McCarthy-Nelson*, the court vacated the defendant's detention due to an untimely hearing. *Id.* ¶¶ 13, 19-20. However, in *McCarthy-Nelson*, the untimeliness of the hearing was based on the State's motion to continue the hearing, which the trial court granted over defendant's objection. *Id.* ¶ 5. Here, the motion to continue was filed by defense counsel based on counsel's conflict due to a previously scheduled jury trial. As such, the delay, to which defendant claims as error, was a delay requested by his trial counsel. Accordingly, *McCarthy-Nelson* is easily distinguishable and inapplicable in this instance.

¶ 29 Equally obvious is the fact that no error—required for a claim of plain error—can be shown. As noted above, defense counsel requested and received a continuance of the originally scheduled hearing. This same fact pattern was previously addressed in *People v. Edwards*, 2024 IL App (2d) 240155-U, ¶¶ 27-30. Therein, defense counsel requested three continuances of the scheduled pretrial hearing. *Id.* ¶ 26. *Edwards* found that defendant waived his right to a timely hearing noting that defendant was the party who stood to benefit from the statutory hearing deadline. *Id.* ¶ 27. *Edwards* further found that disallowing a defendant to waive the time frame for a pretrial release hearing would eliminate defendant's choice to continue the "prehearing detention in order to prepare for the detention hearing and have a better chance at pretrial release." *Id.* We find no fault with *Edwards*'s analysis and hold that no clear and obvious error occurred because defendant waived the 48-hour window for his detention hearing by requesting the continuance.

¶ 30 We note, however, that even if we disagreed with *Edwards* on the issue of waiver, the Illinois Supreme Court has stated that "a defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver' " (*People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001))) and is sometimes referred to as an issue of estoppel (*id.* (citing *People v. Burage*, 23 Ill. 2d 280, 283 (1961))). "Under the doctrine of invited error, an accused may not request to proceed in one manner and then contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (citing *Villarreal*, 198 Ill. 2d at 227-28, *People v. Segoviano*, 189 Ill. 2d 228, 240-41 (2000), and *People v. Lowe*, 153 Ill. 2d 195, 199 (1992)). "To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation], and encourage defendants to become duplicitous." (Internal quotation marks omitted.) *Harvey*, 211 Ill. 2d at 385. Despite the directives of the Illinois Supreme Court, that is exactly what

11

OSAD requests this court do on appeal. Accordingly, we decline defendant's invitation to apply second-prong plain error to defense counsel's request for a continuance that exceeded the statutory hearing time frame. *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44 (invited error precludes plain error analysis).

¶ 31    In the alternative, defendant argues that we should consider defense counsel's request for continuance as ineffective assistance of counsel because the request exceeded the time frame allowed by statute. In response, the State argues that defendant's ineffective assistance claim is precluded by the invited error doctrine. We disagree with the State's argument. Claims of ineffective assistance of counsel are not precluded by the invited error doctrine. See *Villareal*, 198 Ill. 2d at 228 (considering a defendant's claim of ineffective assistance after finding the invited error doctrine was applicable). Therefore, we shall consider defendant's alternative argument.

¶ 32    The United States Supreme Court previously held "that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008). In the context of the sixth amendment, the United States Supreme Court has held that the right to assistance of counsel is the right to "effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The level of assistance is evaluated under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984).

¶ 33    "To prevail on a claim of ineffective assistance of counsel [under *Strickland*], a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. This requires a defendant to show "that counsel's performance was objectively unreasonable under prevailing professional

12

norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). A failure to satisfy either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 34 As such, failure to establish prejudice is a sufficient basis to deny a claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 91. "[I]f it is easier to dispose of an ineffective-assistance claim on the ground that it lacks a showing of sufficient prejudice, a court may proceed directly to *Strickland*'s prejudice prong and need not determine whether counsel's performance was deficient." *People v. Johnson*, 2021 IL 126291, ¶ 53 (citing *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 35 Here, OSAD's claim of prejudice argues that trial counsel's motion to continue the hearing undermined defendant's "fundamental right to liberty." In support, OSAD cites *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)), which stated, " 'any amount of [additional] jail time has Sixth Amendment significance.' " First, we disagree that *Lafler*, or its quoted language from *Glover*, is instructive here, as neither addressed pretrial release hearings; instead, the latter case addressed postconviction sentencing and the former addressed a plea deal. *Lafler*, 566 U.S. at 165.

¶ 36 Importantly, both cases focus on the outcome of the criminal proceeding. See *Glover*, 531 U.S. at 203-04; *Lafler*, 566 U.S. at 168. A similar focus was seen in *Missouri v. Frye*, 566 U.S. 134, 145 (2012), which found deficient performance where the defendant's trial counsel failed to inform defendant of a plea offer prior to the lapse of the offer. The Court held that, to establish prejudice in such a situation, defendant must "show a reasonable probability that *the end result of*

13

*the criminal process* would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." (Emphasis added.) *Id.* at 147.

¶ 37    While it is well established that trial counsel's pretrial actions may trigger Sixth Amendment rights, "[t]he fundamental problem with addressing *Strickland* claims prior to trial is that the outcome of the proceeding has not yet been determined." *People v. Jocko*, 239 Ill. 2d 87, 93 (2010). Here, at the pretrial release hearing stage of the proceeding, defendant cannot show a reasonable probability that the result of the criminal process would have been different because no plea deal is at issue and defendant's trial has not been held. See *Glover*, 531 U.S. at 203-04; *Lafler*, 566 U.S. at 168; *Frye*, 566 U.S. at 145. Nor are we alone in holding that an ineffective assistance of counsel claim fails to show prejudice when a defendant's pretrial release was delayed based on the actions, or inactions, of counsel. See *United States v. Burns*, 990 F.2d 1426, 1437 (4th Cir. 1993) ("That Burns was imprisoned temporarily before trial does not prove that the trial itself was unfair; *** whether the lawyer's unprofessional dereliction contributed to the delay in Burns's release has no bearing upon the lawyer's performance in defending him on the merits."); *Rumley v. Vannoy*, No. 19-9649, 2020 WL 9422952, at *20 (E.D. La. May 29, 2020) ("Where, as here, a petitioner fails to show that his pretrial detention affected his *trial's ultimate outcome*, he has not stated a cognizable ineffective assistance of counsel claim." (Emphasis in original.)).[3] Accordingly, we hold that defendant's claim of ineffective assistance of counsel fails because no prejudice can be shown.

¶ 38    Finally, OSAD argues that the State failed to prove by clear and convincing evidence that less restrictive conditions failed to mitigate any threat posed by defendant. In support, it argues

---

[3]Federal circuit and district court decisions are not binding on this court in the absence of a decision by the United States Supreme Court; while not precedential, we cite these cases as persuasive authority. See *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 51 (citing *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005)).

14

that despite the State's suggestion that its evidence was strong, it failed to present actual evidence of the video. It further argues, citing *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18, that the State's bare allegations that defendant committed a violent offense was insufficient to establish a lack of conditions to mitigate defendant's dangerousness. Finally, it contends that the court's concern about defendant having "access to weaponry" was not supported by the record. The State disagrees. It claims that defendant's lack of argument in the posthearing motion precludes review pursuant to Rule 604(h)(7) and argues that, even if preclusion is ignored, sufficient evidence was presented to support the court's conclusion.

¶ 39 We first address the State's claim of preclusion based on Rule 604(h). Interpretation of supreme court rules involves questions of law that we review *de novo* (*People v. Brindley*, 2017 IL App (5th) 160189, ¶ 16 (citing *People v. Drum*, 194 Ill. 2d 485, 488 (2000))) and "is governed by principles of statutory interpretation" (*People v. Shunick*, 2024 IL 129244, ¶ 22 (citing *People v. English*, 2023 IL 128077, ¶ 13)). That goal "is to give effect to [the supreme court's] intent, most often through the plain and ordinary meaning of the rule." (Internal quotation marks omitted.) *Id.* If the rule is plain and unambiguous, courts are prohibited from " ' "reading into it exceptions, limitations, or conditions [the supreme court] did not express" ' " or adding provisions not found in the rule. *Id.* (quoting *English*, 2023 IL 128077, ¶ 13, quoting *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24). If the language is clear and unambiguous, the language is applied "as written without resulting to aids of construction." *Id.*

¶ 40 Rule 604(h)(2) provides,

"As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the

15

motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 41 We do not find this language ambiguous given the common definitions of the terms. More specifically, the term "ground" is defined as "[t]he reason or point that something (as a legal claim or argument) relies on for validity." Black's Law Dictionary (12th ed. 2024). We note that similar language is found in Rule 605(b)(2) and (c)(2) addressing postconviction appeals. Both paragraphs require the defendant to file a written motion "setting forth the grounds for the motion" or the issue will be waived. See Ill. S. Ct. R. 605(b)(2), (c)(2) (eff. Apr. 15, 2024). The long-established purpose of the waiver rule is

"(1) to insure that the trial court is informed of possible errors so that the court has an opportunity to correct those errors; (2) to give the reviewing court the benefit of the judgment and observations of the trial court with regard to the issues raised on appeal; (3) to prevent a defendant from objecting to that which he has acquiesced throughout the court of the trial; (4) to eliminate unnecessary reviews and reversals; and (5) to prevent the possibility of unlimited litigation." *People v. Sweeny*, 57 Ill. App. 3d 879, 885 (1978) (citing *People v. Pickett*, 54 Ill. 2d 280, 284 (1973), *People v. Irwin*, 32 Ill. 2d 441, 443-44 (1965), and *People v. Morgan*, 44 Ill. App. 3d 459, 461 (1976)).

We further note that time has not diminished the purpose of the requirements. See *Jackson*, 2022 IL 127256, ¶ 15.

¶ 42 Rule 604(h)(7) provides additional clarification and states that,

16

"[w]hether made in the motion for relief alone *or as supplemented by the memorandum*, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." (Emphasis added.) Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 43 Here, defendant's posthearing motion listed issues for consideration but provided absolutely no argument or any basis in support of its claimed issues. As such, the motion failed to meet the requirements of Rule 604(h)(2), which requires a party to provide "the grounds for such relief" requested in the motion. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Defendant's posthearing motion also fails to conform with the statutory obligation of Rule 604(h)(7) that requires the motion for relief to "contain sufficient detail to enable meaningful review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities."

¶ 44 Despite providing no argument in either the posthearing motion or during the oral argument to address the posthearing motion, OSAD provides three bases to support defendant's claim that the State failed to prove by clear and convincing evidence that less restrictive conditions failed to mitigate any threat posed by defendant. While some may find such argument appropriate by relying on the "supplemented by the memorandum" language found in Rule 604(h)(7), we strongly disagree. The use of the word "supplement" infers that something was presented in the first place. To presume otherwise would allow a party to circumvent the rules and ignore the importance of first placing the argument before the trial court. See *People v. Freeman*, 2024 IL App (5th) 240167-U, ¶ 38 ("[T]he waiver determination must be based on whether the issue was properly raised and

17

preserved before the trial court."). As no argument was presented to support this issue, either in writing or during the oral argument before the trial court, we find the issue was waived.

¶ 45                                III. CONCLUSION

¶ 46     For the reasons stated herein, we affirm the trial court's order granting the State's petition to deny release.


¶ 47     Affirmed.

*People v. Drew*, 2024 IL App (5th) 240697

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jefferson County, No. 24-CF-150; the Hon. Jerry E. Crisel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Manuela Hernandez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |