NOTICE

Decision filed 12/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250927-U

NO. 5-25-0927

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 25-CF-646 |
| | ) | |
| KRISTOPHER L. STANLEY, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2 The defendant, Kristopher L. Stanley, appeals the May 6, 2025, order from the circuit court of Macon County that granted the State's petition to deny pretrial relief and the September 11, 2025, denial of his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3 I. BACKGROUND

¶ 4 On May 6, 2025, the defendant was charged by information with one count of aggravated unlawful possession of a weapon, a Class 2 felony, in violation of section 24-1.6(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.6(a) (West 2024)), and one count of unlawful possession of a weapon by a felon, a Class 3 felony, in violation of section 24-1.1(a) of the Criminal Code of 2012

1

(*id.* § 24-1.1(a)). The State filed a verified petition to deny the defendant pretrial release because the defendant was charged with two non-probationable violations, and the defendant's pretrial release would pose a real and present threat to the safety of any persons or the community.

¶ 5   The matter proceeded to a hearing on the petition the same day. At the hearing, the State proceeded by proffer based upon the sworn statement of the police officer, which was provided to the circuit court. The State said that during a traffic stop, officers discovered a loaded firearm underneath the defendant's driver's seat. The sworn statement includes additional information about the stop, specifically that on May 5, 2025, an officer with the Decatur Police Department (DPD) conducted a traffic stop due to an Illinois Vehicle Code violation. The defendant was the sole occupant of the vehicle. During the stop, K9 Officer Wicks from the DPD arrived and his K9 partner alerted officers to the smell of illegal narcotics emitting from the vehicle. Officers conducted a probable cause search of the vehicle and located a loaded Taurus G2C 9-millimeter pistol under the driver's seat, which contained a live round inserted in the chamber and what appeared to be a fully loaded magazine in the magwell of the pistol.

¶ 6   In addition to the sworn statement, the State proffered the defendant's criminal and juvenile history, which it obtained from the pretrial investigation report. The defendant's history included juvenile residential burglary, felony weapons charges, and felony manufacture or delivery of cannabis. The State said, "if this were a single occurrence or a first occurrence it might be a different story but given his record, given his age, given the priors, given the circumstances of his case we believe he's a danger to the community and should be detained."

¶ 7   The defendant proffered that he was 31 years old, self-employed with a house renovation business, recently graduated with his GED, and owned his home in Macon County. While the defendant acknowledged his criminal history, he said that the charges were over 10 years old and

2

showed that he successfully completed supervision or probation. His compliance with previous court orders showed that he would comply with conditions if released. Further, his score on the Revised Virginia Pretrial Risk Assessment Instrument (VPRAI-R), a six, was a moderate level, and the sworn statement from the officer did not indicate that he did not comply during the stop.

¶ 8    After hearing from the parties, the circuit court found that both charges were detainable offenses, and the proof was evident or the presumption great that the defendant had committed the offenses. The evidence showed that the defendant possessed a loaded firearm in a vehicle while not having a valid Firearm Owner Identification (FOID) card or concealed carry license, and that he had a prior felony conviction. The court also found that the defendant posed a real and present threat to the community and that no condition or combination of conditions would mitigate that threat. The court said,

> "[The defendant] has prior criminal history that includes a prior gun offense. He already was not supposed to be in possession of a firearm based on his multiple prior felony convictions. He also[,] based on the severity of these offenses[,] neither one are probation eligible, and he has been listed as a moderate risk on the Revised Virginia Risk Assessment Instrument, so for those reasons he will be detained."

¶ 9    The defendant filed a motion for relief on September 3, 2025. In the motion, the defendant argued that the State failed to prove that the defendant poses a real and present threat because he had a limited criminal history, was not alleged to have caused injury or threaten violence against any person, and his score on the VPRAI-R should have been a two instead of a six. Further, the State failed to prove that conditions could not mitigate any threat, such as GPS-monitored home confinement.

3

¶ 10    The matter proceeded to a hearing on September 11, 2025. During the hearing, the defendant first argued that the score on his VPRAI-R should have been a two instead of a six because the following categories should not have been calculated: failures to appear, two or more violent convictions, and a history of drug abuse. As to the violent convictions, the defendant argued that possession of a gun was not a violent crime, and that the defendant denied any drug use. The defendant further argued that there was no evidence that he did not successfully complete all his probation or supervised releases. Additionally, the defendant obtained an education and was self-employed.

¶ 11    The State argued that the defendant's VPRAI-R score should not be recalculated, as pretrial services completed the evaluation and they are trained as to how to conduct the scores. Additionally, the defendant's prior possession of a weapon charge should be considered a violent offense. As to the drug use, the State argued that the reason for the search that discovered the weapon was due to a narcotic dog alerting to the car, and a police officer discovered cannabis in the vehicle. The State said, "The defendant does pose a risk to the community. Again, he's in a vehicle with a loaded gun, a full magazine, and a chambered round. It just does not get much more dangerous than that kind of situation." The State also argued that conditions would not mitigate the defendant's threat, as his criminal history showed that he did not "comply with community supervision" due to receiving back-to-back felony cases.

¶ 12    The defendant responded that while his history showed a conviction for possession with the intent to deliver cannabis, it does not mean that he used the cannabis. The defendant again argued, "Simply possessing a weapon does not make it intent or a threat to use force against a person" as to his VPRAI-R score.

4

¶ 13    After considering the arguments, the circuit court denied the motion for relief. The defendant timely appealed on September 16, 2025.

¶ 14                                 II. ANALYSIS

¶ 15    The defendant filed his motion for relief on September 3, 2025. The motion for relief argued that the State failed to meet its burden of proving by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no conditions or combination of conditions can mitigate the real and present threat to the safety of any person or persons.

¶ 16    The defendant filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). On appeal, the defendant argues that the circuit court erred in finding that the defendant posed a real and present threat to the community where no evidence showed that the defendant "had ever caused injury or used or threatened violence."

¶ 17    First, we note that the defendant has advanced only one argument from his motion for relief, being that the State failed to prove that the defendant did not pose a real and present threat. The remaining issue in the motion for relief, that no condition or combination of conditions could mitigate that threat, is thus abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being *advanced* on appeal." (Emphasis added.)).

¶ 18    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified

5

petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 19    Our standard of review of pretrial release determinations is twofold. Where the circuit court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Alternatively, where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *Morgan*, 2025 IL 130626,

6

¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ *de novo* review.

¶ 20    The pertinent statute provides a nonexhaustive list of factors courts should consider in determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence or involve a weapon; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior (725 ILCS 5/110-6.1(g)(1)-(9)). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2024)).

¶ 21    We now consider, as the circuit court did, the record presented by the State. In the present matter, the defendant was charged with one count of aggravated unlawful possession of a weapon, a Class 2 felony, and one count of unlawful possession of a weapon by a felon, a Class 3 felony. During a traffic stop, a narcotics dog alerted the defendant's vehicle, which resulted in a search of the vehicle. The defendant was the only occupant in the vehicle. During the search, law enforcement discovered a pistol under the driver's seat of the vehicle. The pistol had a live round inserted into the chamber and what appeared to be a fully loaded magazine in the magwell.

7

¶ 22    The defendant's criminal history shows a 2009 juvenile case for residential burglary, resulting in supervision. In 2011, the defendant was convicted of leaving the scene. In 2013, the defendant was convicted of manufacture/delivery of cannabis. In 2014, the defendant received five years' incarceration within the federal court system for felony possession of a firearm.

¶ 23    In his brief, the defendant states that "While [the defendant] was forbidden to possess the gun, there was no obvious additional illegal *purpose* for his possession of it." (Emphasis in original.) The defendant's brief emphasizes that while it was illegal for the defendant to possess a weapon as a felon, he did not use it or threaten to use it in the present offense or his prior offense. Because of this, the State did not prove that he posed a real and present threat to the community.

¶ 24    Our courts, however, have disproven the argument that possession of a weapon by a felon is not dangerous. As the appellate court found in *People v. Lee*, 2024 IL App (1st) 232137, ¶ 29, "the legislature has specifically pronounced that 'in order to promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms.' " (quoting 430 ILCS 65/1 (West 2022)). The defendant, who is a convicted felon, is explicitly prohibited from possessing a firearm. *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28; 720 ILCS 5/24-1.1 (West 2024). The defendant's possession of a firearm "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *Davis*, 2023 IL App (1st) 231856, ¶ 28; see 430 ILCS 65/1 (West 2024).

¶ 25    One factor to consider when determining dangerousness is if the defendant is known to possess or have access to any weapons. 750 ILCS 5/110-6.1(g)(7) (West 2024). The record shows that the defendant had the weapon stored under the driver's seat of his vehicle while uncased, loaded with additional ammunition in the magwell of the pistol, and immediately accessible. See

*People v. Ross*, 229 Ill. 2d 255, 275 (2008) (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*"). The defendant did not have a FOID card or concealed carry license at the time of the traffic stop, which was likely impacted by the fact that he was a convicted felon. The defendant argues that this possession by itself does not show dangerousness; however, our legislature and case law find that possession of a weapon by a felon is dangerous, and we agree.

¶ 26    Viewing the evidence in its entirety, we find that the State met its burden of proving by clear and convincing evidence that the defendant posed a real and present threat to the safety of an individual or the community. Accordingly, we agree with the circuit court that the defendant poses a real and present threat to the community, and pretrial detention is appropriate.

¶ 27                                III. CONCLUSION

¶ 28    Based on the foregoing reasons, we affirm the circuit court's orders of May 6, 2025, and September 11, 2025.

¶ 29    Affirmed.